## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MICHELLE STRANGER,

       Plaintiff,

vs.                                      No. CIV 05-632 JB

CHECKER AUTO PARTS,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion to Compel Plaintiff's Response to Discovery and for Rule 37(c) Sanctions, filed January 13, 2006 (Doc. 14); and (ii) the Defendant's Notice of Request for Immediate Hearing or Decision Without Hearing on Motion to Compel, filed March 6, 2006 (Doc. 35). The Court held a hearing on the motion on March 8, 2006. The primary issue is whether the Plaintiff Michelle Stranger's answers and responses to certain discovery requests are adequate. Because the Court finds that Stranger's answers and responses are not sufficient, and that Defendant CSK Auto Inc. ("CSK") attempted in good faith to resolve the dispute without the Court's intervention, the Court will grant CSK's motion to compel in part and grant CSK a percentage of fees incurred in preparing this motion; the Court will deny CSK's request that the Court exclude Stranger's evidence at trial.

### FACTUAL BACKGROUND

Stranger applied to work for CSK in 2003 and was hired to be a "Commercial Driver." Complaint for Sexual Harassment (Quid Pro Quo) ("Complaint") ¶ 11,[1] at 3, filed June 5, 2005 (Doc.

---

[1] There are two paragraphs numbered as 11 in the Complaint. <u>See</u> Complaint at 3. The above citation to paragraph 11 refers to the second paragraph 11.

1).  Stranger's Complaint arises out of alleged sexual harassment by her manager, Mike Bradshaw, at Checker Auto in Farmington.  See generally Complaint.

Bradshaw allegedly made a number of sexual advances towards Stranger.  See id. ¶¶ 13-14, 18-20 at 3-4.  On a number of occasions, he made sexual demands on Stranger and ultimately threatened her with termination if she did not comply.  See id.  Stranger alleges that, as a result of these acts, she informed CSK of her intentions to resign, but before she could, Bradshaw terminated her employment.  See id. ¶ 20, at 4.  CSK contends that Stranger walked off her job on July 7, 2004.  See Defendant's Motion to Compel Plaintiff's Response to Discovery and for Rule 37(c) Sanctions ("Motion to Compel") ¶ 1, at 2.

Stranger filed a charge with the Equal Employment Opportunity Commission ("EEOC") on October 6, 2004.  See Complaint ¶ 8, at 2.  The EEOC ultimately issued a "Dismissal and Notice of Rights" letter.  Id.

## PROCEDURAL BACKGROUND

Stranger filed her Complaint on June 5, 2005.  See generally Complaint.  In the Complaint, Stranger alleges that, before she walked off the job, she was subjected to sexual harassment by a CSK employee in violation of Title VII of the Civil Rights Act of 1964 and that CSK is vicariously liable for such sexual harassment.  See id. ¶¶ 21-23, at 5.  Stranger alleges damages of "emotional and mental pain and suffering, humiliation, stress, uncertainty, anger, frustration," and physical damages.  Id. ¶¶ 23, 26, at 5-6.  Stranger also seeks punitive damages, alleging that CSK acted "with the intention of causing harm" to her.  Id. ¶¶ 27-29, at 6.

Local Rules prohibited CSK from pursuing discovery until the parties conferred as required by rule 26(f) of the Federal Rules of Civil Procedure.  See D.N.M.LR-Civ. 26.4(a).  Counsel and the

parties conducted their rule 26(f) conference on October 26, 2005. See Motion to Compel ¶ 11, at 3; Plaintiff's Response in Opposition to Defendant's Motion to Compel Plaintiff's Response to Discovery and for Rule 37(c) Sanctions ("Response") at 2, filed February 5, 2006 (Doc. 21).

Stranger's Initial Disclosures, along with the Medical Records Release that D.N.M.LR-Civ. 26.3(d)(1) requires, were due before the Court's rule 16 scheduling conference, which the Court held on November 8, 2005. See Initial Scheduling Order at 1-2, filed September 21, 2005 (Doc. 5). CSK asserts that Stranger did not seek nor obtain from CSK an extension of time to produce these. See Defendant's Reply in Support of Motion to Compel Plaintiff's Response to Discovery and for Rule 37(c) Sanctions ("Reply") at 3, filed February 8, 2006 (Doc. 22).

CSK represents that neither party in this case served separately labeled Initial Disclosures, and that both apparently relied upon the Court's Local Rules, which permit the contents of an Initial Pretrial Report to meet, at least in part, a party's Initial Disclosure burden. See Reply ¶ 5, at 2; D.N.M.LR-Civ. 26.3(c). CSK's counsel represents that he has since advised Stranger's counsel that Stranger's Initial Pretrial Report ("IPTR") sections fail to satisfy Stranger's Initial Disclosure obligations. See Motion to Compel ¶ 5, at 2.

The Complaint indicates that Stranger has put her medical condition at issue, and her portions of the IPTR confirm this. See Complaint ¶¶ 23, 26, at 5-6; IPTR at 7, filed November 17, 2005 (Doc. 13). In her portions of the IPTR prepared in November 2005, Stranger stated that "Plaintiff's Exhibits" will include "Medical records." IPTR at 7.

At the Scheduling Conference on November 8, 2005, the Court set a deadline for completion of all discovery of April 7, 2006. See id. at 3. Pretrial motions are due May 7, 2006. See id. at 8. The Pretrial Conference is scheduled for June 30, 2006. See id. at 9. The Defendant's Pretrial Order

is due July 6, 2006.  See id. at 8.  A jury trial is scheduled for July 10, 2006.  See id. at 9.

CSK asserts that despite its repeated requests, Stranger had not as of January 13, 2006 -- the day CSK filed this motion and seven months after Stranger filed her lawsuit -- provided any calculation regarding medical damages.  See Motion to Compel ¶ 8, at 3.  On November 7, 2005, CSK served its first set of written discovery on Stranger -- First Set of Interrogatories and Requests for Production of Documents -- for which Stranger's responses were due December 12, 2005.  See Certificate of Service of First Set of Interrogatories and Request for Production, filed November 7, 2005 (Doc. 8).  CSK represents that on December 5, 2005, Stranger's counsel, Mr. Dennis Montoya, called CSK's counsel, Mr. Trent Howell, to request an additional two weeks -- until December 26, 2005 -- for Stranger to respond to CSK's discovery requests.  See Motion to Compel ¶ 13, at 4.  CSK asserts that Mr. Howell agreed, in exchange for Mr. Montoya committing: (i) to execute and return, immediately, CSK's Authorizations to Release Tax, Employment and Medical Information -- which were included in the pending discovery requests -- so that CSK could begin compiling its own records; and (ii) commit to a date of January 10, 2006 for Stranger's deposition to occur.  See id.  CSK served a Notice of Deposition for January 10, 2006.  See Notice of Deposition (dated December 7, 2005).

Thus, on December 5, 2005, Mr. Howell agreed to an extension of time to respond to his discovery requests until December 26, 2005.  Mr. Montoya represents that, because of an office error, this new deadline was not calendared.  See Response at 2.

Stranger did not honor her commitment to immediately execute and return the Authorization to Release Tax, Employment and Medical Information, nor did she honor her commitment to provide responses to CSK's outstanding written discovery requests by the extended written discovery

deadline of December 26th; the discovery responses were not sent until January 13, 2006, and the release authorizations and responses were not sent until January 26, 2006 -- almost two weeks after CSK filed its Motion to Compel, and after Mr. Howell sent two additional letters on January 24, 2006, and January 26, 2006.  See Letter from Julie Schobey to Trent A. Howell (dated January 26, 2006); Transmittal Memorandum from Denise Cordova to Trent Howell ("Transmittal Memorandum") at 1 (dated January 13, 2006); Plaintiff's Responses to Defendant's First Set of Interrogatories and Request for Production of Documents to Plaintiff ("Plaintiff's Discovery Responses"); Letter from Trent A. Howell to Dennis Montoya (dated January 24, 2006); Letter from Trent A. Howell to Dennis Montoya (dated January 26, 2006).  Stranger also did not keep her commitment to appear for deposition on January 10, 2006.  On December 29, 2005, Mr. Montoya's assistant called CSK's counsel to request that the deposition be rescheduled for January 16, 2006, and CSK agreed.  See Motion to Compel ¶¶ 17-19, at 4.

CSK asserts that it agreed to move Stranger's deposition to the alternate date, both in an effort to cooperate and because, at the time, its counsel assumed Stranger had honored her commitment to serve discovery responses by mail on December 26, 2005.  See id. ¶ 19, at 4.  CSK also asserts that, after waiting sufficient time to account for any holiday-related delays in mail delivery, Mr. Howell -- assured that Stranger had not, in fact, served either Initial Disclosures or discovery responses -- faxed correspondence to Mr. Montoya to inquire when Stranger's responses would be provided.  See Letter from Trent A. Howell to Dennis Montoya (dated January 10, 2006); Motion to Compel ¶ 20, at 5.

Receiving no response to his letter, Mr. Howell represents that, on the morning of January 12, 2006, he called Mr. Montoya's office and related the same concern to Mr. Montoya's staff, who

confirmed that Mr. Montoya would be in the office that afternoon.  <u>See</u> Motion to Compel ¶ 21, at

5.  After waiting well into that afternoon, Mr. Howell faxed another letter to Mr. Montoya, pointing

out the problems that Stranger's failure to respond to the written discovery, as well as Stranger's

failure to make Initial Disclosures, had created for completion of her upcoming deposition.  <u>See</u>

Letter from Trent A. Howell to Dennis Montoya (dated January 12, 2006); Motion to Compel ¶ 22,

at 5.  Mr. Howell also noted the problems these discovery delays were creating for the Court-ordered

Settlement Conference, which was set for February 9, 2006, and requested that Mr. Montoya provide

a written response to these concerns by noon on Friday, January 13, 2006 -- the last business day

before Stranger's scheduled deposition.  <u>See</u> Letter from Trent A. Howell to Dennis Montoya at 1,

3 (dated January 12, 2006).

        CSK asserts that Mr. Montoya did not contact Mr. Howell by noon on Friday, January 13,

2006.  <u>See</u> Motion to Compel ¶ 23, at 5.  At noon, Mr. Howell called Mr. Montoya's staff, who

indicated that Mr. Montoya was out of the office, but that Mr. Montoya would call Mr. Howell by

1:00 p.m. and address all of Mr Howell's concerns.  <u>See</u> Motion to Compel ¶ 23, at 5.  Mr. Howell

did not receive a call by 2:00 p.m. that afternoon, and upon receipt of telephone calls from the court

reporter, who wanted to confirm the deposition, Mr. Howell faxed another letter to Mr. Montoya,

advising Mr. Montoya that CSK was proceeding with a motion to compel discovery and for other

relief, and asking that Mr. Montoya confirm that Stranger would still appear for the deposition

scheduled on the next business day.  <u>See</u> Letter from Trent A. Howell to Dennis Montoya (dated

January 13, 2006); Motion to Compel ¶ 24, at 6.

        Around 3:30 p.m. on January 13, 2006, Mr. Montoya called and asked if CSK would like to

vacate the deposition.  <u>See</u> Motion to Compel ¶ 24, at 6.  Mr. Howell reiterated that, while Stranger's

failure to make other disclosures -- halfway into the discovery period -- required that CSK immediately start her deposition, such failure also deprived CSK of sufficient information to complete it on January 16, 2006. See id. Mr. Montoya agreed that Stranger would reappear for deposition at a later date. Mr. Montoya would not, however, agree that Stranger would bear the court reporter costs. See id.

During the same telephone call, Mr. Montoya stated he was faxing Mr. Howell "everything you need" to prepare for Stranger's deposition "over the weekend." Id. Mr. Howell asked Mr. Montoya what this information included, and Mr. Montoya stated that he was faxing discovery responses, which would not include medical records. See id. Mr. Howell observed that Stranger had specifically asserted "medical records" as exhibits in the IPTR, and Mr. Montoya indicated that they may not have any on hand. Id. Mr. Howell informed Mr. Montoya that he would review the responses to discovery and other concerns and then determine whether to seek relief from the Court. See id.

CSK asserts that Mr. Montoya's assistant called Mr. Howell immediately after Mr. Howell's telephone conversation with Mr. Montoya. See id. ¶ 26, at 6. The assistant told Mr Howell that he would receive the fax "before 5:00 p.m." Id. Mr. Howell requested that the assistant reiterate to Mr. Montoya that Mr. Howell would still file a motion if the fax did not resolve all issues and address all concerns that Mr. Howell had conveyed in his prior correspondence. See id. Mr. Montoya faxed Stranger's responses to discovery at 5:14 p.m. See Transmittal Memorandum at 1.

In its motion, CSK requests the Court, pursuant to rules 26(a)(1) and 37(a)(2)(B) of the Federal Rules of Civil Procedure and D.N.M.LR-Civ. 26.3(d), to compel Stranger to provide Initial Disclosures and to respond to discovery requests for basic details and records of her: (i) damage

claims; (ii) past and present employment; (iii) past involvement with lawsuits; (iv) witnesses' general areas of testimony; (v) medical history and treatment; and (v) criminal history. See Motion to Compel at 1. CSK also requests that the Court prohibit her from presenting trial evidence of certain damages; require her to bear CSK's deposition costs; and require her to pay CSK's attorney's fees for this motion. See id. CSK contends that the Court should enter an order of sanctions, pursuant to rule 37(b)(2), including: (i) striking from the pleadings any claim for medical bills, physical injury, mental anguish, emotional distress, pain and suffering, humiliation or reputation impairment; and (ii) prohibiting presentation of evidence on such matters at trial. See id. at 11. CSK also asks the Court to require Stranger to bear the costs -- including court reporter and videographer appearance and transcription fees -- for each session and/or volume of the deposition. See id.

Neither Stranger's Initial Disclosures nor a Medical Records Release accompanied the fax that Mr. Montoya sent CSK's counsel at 5:14 p.m. on January 13, 2006. See generally Transmittal Memorandum; Plaintiff's Discovery Responses. CSK contends that the following discovery responses sent on January 13, 2006, are deficient:

**1. Interrogatory No. 3 (Damages Calculation).**

Stranger seeks $24,750.20 in "Lost Wages," $50,000.00 in "Lost Enjoyment of Life," $100,000.00 in "Emotional Pain and Suffering," $50,000.00 in "Physical Pain and Suffering," and $625,000.00 in "Punitive Damages" -- a total of $849,750.20 in damages. See Plaintiff's Rule 26 Disclosures at 3-4.

Stranger alleged that she had undergone treatments for both emotional and physical pain and suffering. See Plaintiff's Discovery Responses at 3 ("Emotional Pain and Suffering . . . Plaintiff has suffered from depression, anxiety, anger, in which the plaintiff was treated by her healthcare

provider."); id. at 3-4 ("Physical Pain and Suffering . . .  The Plaintiff's emotional pain and suffering resulted in physical pain and suffering such as headaches and stomach problems which were treated by her health care provider.").

Stranger calculates lost-wages damages in conclusory terms, but does not offer any supporting documents.  She also does not offer any supporting rationale or documents for her other damage calculations -- lost enjoyment of life, emotional pain and suffering, physical pain and suffering and punitive damages.

### 2. Interrogatory No. 4 (Efforts for Re-Employment).

Stranger has not provided any contact information for any of the other employers with whom she allegedly applied during or following her CSK employment.  See Plaintiff's Discovery Responses at 4-5.

### 3. Interrogatory No. 5 (Other Lawsuits).

CSK asked Stranger in Interrogatory No. 5 to

> [i]dentify by caption, style, court or agency, cause, claim or charge number, and date any and all actions in court or proceedings before any administrative body in which you have participated, and . . . your capacity in each, including, but not limited to, in the capacity of Plaintiff, Defendant, charging party, claimant, witness or other, and the outcome of any and all such court actions or proceedings.

Id. at 5.   Stranger denied having been in court except as a party to a divorce proceeding and having "testified before a Judge in a Criminal matter."  Id. at 6.  While admitting lawsuits, Stranger did not provide the requested identifying information -- "caption, style, court or agency, cause, claim or charge number, and date . . . capacity in each . . . and the outcome."  Id. at 5-6.

### 4. Interrogatory No. 6 (Witnesses).

While providing only first names of persons having relevant knowledge, Stranger failed to

provide last names, addresses, indicate whether they have provided oral or written statements or outline "the substance of all [their] information or knowledge." Id. at 6.

**5. Interrogatory No. 7 (Other Employment).**

Stranger did not provide the complete details -- e.g., address, immediate supervisor and reason for leaving -- which CSK requested. See id.

**6. Interrogatory No. 8 (Medical History).**

Stranger did not provide complete contact information sufficient to fulfill her Initial Disclosure obligations, and Stranger's response to this Interrogatory fails to provide the requested "detail on all dates of examination, visit, consultation and treatment." Id. at 7.  Stranger named persons involved as "P.M.S. Clinic . . .   Sheri Mann . . .  Jamie Bee . . . [and] Hiddie . . . ." Id.

**7. Requests for Production Nos. 2-3 (Supporting Documents).**

Stranger states that "[a]ll documents for this request are in the possession of my attorney, Mr. Montoya," but she does not indicate whether such documents were or will be produced. Id. at 8.

**8.    Requests for Production Nos. 6-8 (Documents Relating to Damages and Employment - and Tax-Record Authorizations).**

Stranger states that these documents are "[t]o be provided," but attached none. Id. at 8.

**9. Request for Production No. 10 (Communications to or from CSK).**

Stranger identified "[o]ne, recorded cassette tape," which she did not produce. Id. at 9.

**10. Request for Production No. 13 (Medical Records, Bills, Statements or Correspondence).**

Stranger's response indicates: "Plaintiff has signed medical authorization for this purpose." No such authorization accompanied her fax, nor did Mr. Montoya produce any medical records that post-date her job departure. See id. at 9.  Further, the few, older medical records that Stranger

provided involve "nasal congestion," id. at 11, and a series of abdominal symptoms diagnosed as relating to a kidney obstruction suffered during her pregnancy in 1997 -- six years before she began working for CSK, see id. at 12-16.

**11.  Request for Production No. 14 (Other Lawsuits).**

CSK asked Stranger for "[a]ny records of prior lawsuits in which Plaintiff has been a Plaintiff, Defendant, charging party, claimant, witness or other." Id. at 9.  While elsewhere admitting that she was a party to a divorce proceeding and "testified before a Judge in a Criminal matter," id. at 6, Stranger states here: "Plaintiff is not aware of any lawsuits," id. at 9.

The responses faxed at that time included six pages of medical records, which all pre-dated Stranger's alleged harassment.  See Plaintiff's Discovery Responses at 11-16.  The documents that Mr. Montoya faxed to Mr. Howell on January 13, 2006 included the original fax line -- at the bottom of the page -- demonstrating that Mr. Montoya had received these medical records on October 25, 2005, three months earlier.  See id. at 11-16.  The bottom of each page reads, upside-down and backwards, "OCT-25-2005 11:39 FROM THE MAILROOM TO 15052468859"; the top of each page confirms that "15052468859" is the fax number for "Montoya Law, Inc." Id.

CSK attempted to conduct Stranger's deposition with the information it had, and on January 16, 2006, CSK convened the first deposition of Stranger.  See Volume I of Videotaped Deposition of Michelle Stranger Written Transcript ("Vol. I Stranger Depo. Written Transcript") (taken January 16, 2006).  In her deposition on January 16, 2006, Stranger denied any involvement in any court proceeding except "divorces" and a witness role in a criminal matter -- a burglary at a neighbor's home. Id. at 97:15-98:21.

Stranger represents that, after approximately five hours, Mr. Montoya terminated the

deposition, because of Mr. Howell's refusal to provide Stranger with a break to go to the restroom and because of Stranger's state of fatigue and emotional upset.  <u>See</u> Response at 2.  CSK contends that Mr. Howell allowed Stranger a break within little more than a minute of it being requested, and immediately after she indicated she needed to use the restroom, and that the triggering event that ended the deposition was that Mr. Montoya walked out at 3:10 p.m. over his own dispute with Mr. Howell concerning production of records.  <u>See</u> Vol. I. Stranger Depo. at 159:24-160:24; Reply at 11 n.4.  The transcript of the deposition shows that Mr. Howell allowed Stranger to take a break shortly after the request and immediately after she indicated that she needed to use the restroom.  <u>See</u> <u>id.</u> at Vol. I. Stranger Depo. Written Transcript at 159:24-160:24.

CSK contends that the five hours of testimony that Stranger had given up to that point occupied 155 pages of transcript -- roughly one page per two minutes, and that at no point in the record did Stranger express any distress or inability to continue.  <u>See</u> Reply at 11 n.4.  It appears that the event that triggered the termination of the deposition was Mr. Montoya walking out of the deposition because of his dispute with Mr. Howell regarding production of records.  <u>See</u> Stranger Depo. at 159:5-174:19 ("Mr. Montoya: . . .  I don't feel well enough to continue.  So I'm going to take the day off . . . .").  The written transcript evidences that CSK's counsel was not out of line with his requests of Mr. Montoya on the record and called him "sir" throughout.  Vol. I. Stranger Depo. Written Transcript.

Mr. Montoya agreed on that day to continue Stranger's deposition on January 27, 2006.  <u>See</u> Reply at 2-3.  Before leaving the January 16, 2006 deposition, Mr. Montoya also agreed to produce the relevant releases "in the next couple of days."  Vol. I. Stranger Depo. Written Transcript at 172:8-172:15.  Mr. Howell did not receive anything from Stranger by January 24, 2006, and he sent

two more letters to Mr. Montoya, for a total of five letters.  See Letter from Trent A. Howell to Dennis Montoya (dated January 24, 2006); Letter from Trent A. Howell to Dennis Montoya (dated January 26, 2006); Letter from Trent A. Howell to Dennis Montoya (dated January 10, 2006); Letter from Trent A. Howell to Dennis Montoya (dated January 12, 2006); Letter from Trent A. Howell to Dennis Montoya (dated January 13, 2006).

Stranger did not produce the Initial Disclosures nor the Authorized Releases -- that Mr. Montoya promised on December 5, 2006, to immediately serve -- until January 26, 2006, two weeks after CSK filed its Motion to Compel.  See Transmittal Letter from Julie Schobey to Trent A. Howell (dated January 26, 2006)(together with attachments).  Julie from Mr. Montoya's office left a voice message for Mr. Howell at 9:16 a.m. on January 26, 2006, stating that she would fax the records releases to Mr. Howell that morning.  See Letter from Trent A. Howell to Dennis Montoya at 1 (dated January 26, 2006).  At 4:00 p.m. on January 26, 2006, CSK's counsel -- having received no faxed releases or other communications from Mr. Montoya -- faxed his second correspondence in three days to Mr. Montoya, noting the repeated failure to meet the Court or self-imposed deadlines to produce releases and other information and noting that Stranger's obstructions were now jeopardizing the Court's discovery and trial dates.  See id. at 1-2.

At 4:55 p.m. on Thursday, January 26, 2006 -- less than twenty-four hours before Stranger's deposition was scheduled to resume -- Mr. Montoya faxed copies of releases and a set of Initial Disclosures -- more than two and one-half months after they were originally due -- that still offered no more detail on damages, no more documents relating to her claims, and no more contact information regarding her subsequent employers or primary counselors, "Jamie Bee" and "Sheri Mann," than she had provided in her previous discovery responses.  Compare generally Plaintiff's

-13-

Rule 26 Disclosures, with Plaintiff's Discovery Responses.  See Letter from Julie Schobey to Trent A. Howell (dated January 26, 2006); HIPPA Authorization to Disclose Protected Health Information Medical Records at 1-2 (dated January 19, 2006); HIPPA Authorization to Disclose Protected Health Information Mental Health Records at 1-2 (dated January 19, 2006); Request for Copy of Tax Records (dated January 19, 2006); Authorization to Release Employment Records (acknowledged January 20, 2006).

Stranger's deposition continued on January 27, 2006 -- two weeks after the first deposition -- and lasted the entire day.  See Volume II of Videotaped Deposition of Michelle Stranger Written Transcript ("Vol. II Stranger Depo. Written Transcript") (taken January 27, 2006); Response at 3. Stranger initially denied any prior involvement with courts except for her divorce and a witness role in a criminal matter:

> Q Have you ever had any role in any other criminal proceeding as a witness or complainant, somebody who complained to the police, or had charges against you?
>
> A Charges against me?
>
> Q Yes, ma'am.
>
> A No.
>
> Q What about the other parts of that question?  Have you ever been a witness in any other criminal matter?
>
> A No.
>
> Q And have you ever filed or had on your behalf filed a criminal complaint?
>
> A No.
>
> Q Have you been a party to any other civil case other than this?
>
> A No.

Q And let me clarify what I mean by civil case.  You have already indicated you had to go to court for your divorce, right?

A Yes.

Q And when I say civil case, I don't mean just another sexual harassment suit.  But any situation at all where you either filed papers with the court or had -- or were served with papers from a court.

A Just child custody.

Vol. II Stranger Depo. Written Transcript at 27:6-28:6.  Later in the deposition, Stranger denied that her relationships with Mr. Stranger, her ex-husband, and Mr. Andreas, her fiancé, had ever involved any of the three in court proceedings.  See id. at 47:2-47:5.  When, however, Mr. Howell confronted her with questions on particular matters, Stranger admitted involvement in those proceedings.  See id. at 67:12-68:1 (acknowledging a post-1998 bankruptcy filed as a married couple with Mr. Stranger); id. at 68:23-69:1 (acknowledging a domestic violence petition against Mr. Stranger); id. at 73:15-76:15 (acknowledging court appearance between 1998 and 2000 for a "reckless driving" citation to which she pled guilty).  Mr. Montoya agreed to allow CSK to conduct another deposition of Stranger if necessary.  See Response at 3.

After the deadline for Stranger to file a response to the motion to compel -- January 30, 2006 -- had passed, CSK advised Mr. Montoya of that fact and Mr. Howell and Mr. Montoya agreed that Mr. Montoya would file the Response on Friday, February 3, 2006.  See Letter from Trent A. Howell to Dennis Montoya (dated February 2, 2006)(reminding Mr. Montoya that Stranger's response to the motion to compel was late); Letter from Trent A. Howell to Dennis Montoya (dated February 2, 2006)(acknowledging agreement that Mr. Montoya would file the response on Friday, February 2, 2006).  Mr. Montoya did not file the response within the agreed, extended time; Mr. Montoya filed

an overdue response on February 5, 2006.  See Response.  CSK then filed a Reply and Notice of Completion of Briefing on February 8, 2006.  See Reply; Notice of Completion of Briefing (Doc. 23).

On February 10, 2006, the Court issued a Notice of Hearing on CSK's Motion to Compel for 10 a.m. on February 16, 2006.  See Notice of Motion Hearing (Doc. 24).  Mr. Montoya waited until the afternoon of February 15, 2006 -- less than twenty-four hours before that hearing -- to have his assistant, Julie, advise CSK and the Court of the need to cancel the hearing.  See Defendant's Response to Plaintiff's Second Motion to Continue Hearing on Motion to Compel ("Response to Second Motion to Continue") at 3, filed February 27, 2006 (Doc. 32); Motion to Continue Hearing on Motion to Compel ("First Motion to Continue"), filed February 15, 2006 (Doc. 26).  Mr. Montoya asserted that the continuance was necessary because of a trial setting in the Second Judicial District of New Mexico in a case captioned State of New Mexico v. Fred Gonzales, Case No. CR 04-02390. See First Motion to Continue ¶ 1, at 1.

CSK objected to a continuance because of the untimeliness of Mr. Montoya's request as well as the need for immediate discovery responses.  See Defendant's Reply in Support of Motion to Compel Plaintiff's Response to Discovery and for Rule 37(c) Sanctions ("Response to First Motion to Continue"), filed February 15, 2006 (Doc. 27).  The deadline for discovery, at that time, was approximately only seven weeks away.  The Court heard Stranger's First Motion to Continue on February 15, 2006, and granted Stranger's motion based on the uncertainties that may attend the actual trial commencement date of criminal proceedings on a trailing docket in the Second Judicial District.  See Clerk's Minutes, filed  February 15, 2006 (Doc. 29).

On February 22, 2006, the Court issued a Notice of Hearing on CSK's Motion to Compel for 10:00 a.m. on February 28, 2006.  See Notice of Motion Hearing (Doc. 30).  CSK represents that

five days later, Mr. Montoya had his assistant, "Julie," call CSK's counsel at 2:00 p.m. on February 27, 2006 to request cancellation of the February 28, 2006 hearing.  Response to Second Motion to Continue ¶ 14, at 2.  Julie indicated that the continuance was necessary because of a civil trial setting in the Thirteenth Judicial District of New Mexico in a case captioned <u>Hastings v. Board of Education of Rio Rancho Public Schools</u>, Case No. D-1329-CV-0200400359.  <u>See id.</u> ¶ 15, at 3; Motion to Continue Hearing on Motion to Compel ¶ 1, at 1, filed February 27, 2006 (Doc. 31).  Mr. Montoya was aware or should have been aware of the February 28, 2006 trial date in <u>Hastings v. Board of Education of Rio Rancho Public Schools</u> as of September 27, 2005.  <u>See Hastings v. Board of Education of Rio Rancho Public Schools</u>, Case No. D-1329-CV-200400359, Case Detail at 3.  Stranger filed a motion to continue the February 28, 2006 hearing on February 27, 2006.  <u>See</u> Motion to Continue Hearing on Motion to Compel.

CSK again opposed the motion because of the untimeliness of Mr. Montoya's request, as well as the need for immediate discovery responses, with the deadline for discovery, at that time, approximately five weeks away.  <u>See</u> Response to Second Motion to Continue ¶ 17, at 3.  The Court heard Mr. Montoya's Second Motion to Continue, on February 27, 2006, and, based on Mr. Montoya's representations that his <u>Hastings</u> trial would be over by 3:00 p.m. on March 3, 2006, vacated the hearing, but told Mr. Montoya to contact the Court and/or CSK's counsel at the end of business on Thursday night, March 2, 2006 or first thing Friday morning, March 3, 2006, to inform about the progress of the trial and to discuss rescheduling a hearing that day.  <u>See</u> Transcript of Hearing at 5:18-6:12 (taken February 27, 2006).[2]  Mr. Montoya told the Court he would get in touch

_____

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

with the Court's CRD, Ms. K'Aun Sanchez, Thursday night or Friday morning.  See id. at 6:20-21.

During the two hearings, Mr. Montoya contended that he has made strides toward resolving the issues in CSK's motion to compel.  See Clerk's Minutes, filed February 15, 2006; Transcript of Hearing at 4:10-13.  CSK disputes the accuracy of this representation.  See Defendant's Notice of Request for Immediate Hearing or Decision Without Hearing on Motion to Compel ("Request for Immediate Hearing") ¶ 24, at 4, filed March 6, 2006 (Doc. 35).  CSK represents that the state of affairs it described in its reply to Stranger's response to the Motion to Compel remains accurate.  See id.  CSK states that the only change after it filed its motion was that Stranger finally served Initial Disclosures, which CSK describes as insufficient in its Reply.  See id.

Mr. Montoya did not contact Ms. Sanchez on Thursday evening, or on Friday morning.  CSK's counsel received no contact from Mr. Montoya on Thursday, on Friday, or on Monday, March 6, 2006, even though CSK faxed Mr. Montoya a letter regarding Mr. Montoya's failure to comply with the Court's instructions.  See Letter from Trent A. Howell to Dennis Montoya at 1 (dated March 3, 2006).

On March 6, 2006, CSK requested an immediate hearing on its motion to compel and/or asked the Court to grant CSK's motion to compel without hearing.  See Request for Immediate Hearing at 4.  The Court set a hearing for 10:00 a.m. on March 8, 2006.  See Notice of Motion Hearing (Doc. 36).  At this hearing, Stranger offered the following as her opposition to the award of sanctions, and as justification for some of her inconsistent statements: (i) she is not a very good record keeper and has had trouble getting addresses etc. . .; (ii) she has been very emotional since the alleged harassment; (iii) she has less than a highschool education; (iv) she may not have understood a moving violation to be a misdemeanor; and (vi) because of the Internet, the discovery was equally

-18-

accessible to both parties.  <u>See</u> Transcript of Hearing at 7:9-11:21 (taken March 8, 2006).  Stranger

also requested that if the Court did award sanctions that it would apportion the costs pursuant to rule

37.  <u>See</u> <u>id.</u> at 11:9-14.

## FEDERAL DISCOVERY RULES

Rule 26(a)(1) requires a plaintiff to provide, among other things,

a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered[.]

Fed. R. Civ. P. 26(a)(1)(C).

The Court's Local Rules require that, in any case in which "the physical or mental medical

condition of a party is an issue," that party produce:

(1) a list of the name, address and phone number of any healthcare provider, including without limitation, any physicians, dentists, chiropractors, mental health counselors, clinics and hospitals which have treated the party within the last 5 years preceding the date of the occurrence set forth in the pleadings;

(2) all records of such healthcare providers which are already in that party's possession;

(3) for each healthcare provider, a signed authorization to release medical records form, as set forth in Appendix "A" [to the District's Local Civil Rules].

D.N.M.LR-Civ. 26.3(d).

The Federal Rules of Civil Procedure also provide the standard governing sanctions in relation

to a motion to compel.  Rule 37(a)(4)(A) sets forth:

If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the

> reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Courts have denied requests for costs and attorney's fees when the movant did not make a good faith attempt to resolve discovery matters before filing a motion to compel.  See Marsch v. Rensselaer County, 218 F.R.D. 367, 372 (N.D.N.Y. 2003)("Where . . . the moving party has sent a single letter to opposing counsel and taken no further steps to confer on the issue, the moving party has not satisfied its duty to make a good faith effort to resolve the dispute before seeking court intervention.")(citations omitted); Williams v. Board of County Comm'rs of the Unified Gov't of Wyandotte County & Kan. City, Kan., 192 F.R.D. 698, 700 (D. Kan. 2000)("A single letter between counsel which addresses the discovery dispute . . . does not satisfy the duty to confer.")(citation omitted).  Also, inability to show how an adversary's wrongful conduct caused any harm is a proper basis for denying sanctions.  See Sheets v. Yamaha Motors Corp., 891 F.2d 533, 539 (5th Cir. 1990).

"As a general rule, the imposition of sanctions for abuse of discovery under Fed. R. Civ. P. 37 is a matter within the discretion of the trial court."  Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999)(citations and internal quotations omitted).  "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgement."  Id. (citations and internal quotations omitted).

"Bad faith . . . is not required for a district court to sanction a party for discovery abuses. Sanctions are proper upon a finding of wilfulness, bad faith, or fault on the part of the noncomplying litigant."  Melendez v. Illinois Bell Tel. Co., 79 F.3d 661, 671 (7th Cir. 1996)(citation omitted). See Coletti v. Cudd Pressure Control, 165 F.3d at 777 (finding district court did not abuse its discretion

in not awarding sanctions where the record on its face evidenced no willful misconduct, bad faith, or fault)(citing <u>Melendez v. Illinois Bell Tel. Co.</u>, 79 F.3d at 671). "District courts . . . may only impose sanctions that are 'just,' that is, proportionate to the circumstances surrounding a party's failure to comply with discovery rules." <u>Melendez v. Illinois Bell Tel. Co.</u>, 79 F.3d at 672 (citation omitted).

## <u>ANALYSIS</u>

That Stranger faxed a document entitled "Plaintiff's Responses to Defendant's First Interrogatories and Requests for Production" does not render CSK's motion "moot." CSK's motion disputes the sufficiency of those answers. The Court agrees that they are not adequate and will compel more complete answers. Neither Stranger nor Mr. Montoya has provided CSK sufficient basis to evaluate her claims of liability or damages. They have frustrated the Court's objectives and the federal rules' goals.

### 1.    <u>CSK's Good Faith Efforts to Resolve Dispute.</u>

The history of cooperation in this case speaks for itself. It is late in this lawsuit. CSK went to sufficient lengths to obtain Stranger's cooperation without the Court's involvement. CSK took necessary steps to confer in good faith, which steps involved more than just a single letter.

CSK made numerous efforts to resolve its dispute before filing its motion to compel on January 13, 2006. CSK made good-faith efforts to resolve the dispute in the sixty days since Initial Disclosures were due and in the thirty days since discovery responses were due. First, CSK had already agreed to discovery deadline extensions. Second, CSK's counsel sent three letters within the span of three days regarding Stranger's discovery responses as well as Stranger's Initial Disclosures. Three days after Mr. Howell faxed his first letter to Mr. Montoya's office, Mr. Montoya's office prepared and submitted to CSK its responses, but as the Court will discuss later, they were

inadequate.

Despite numerous efforts by CSK's counsel to resolve these issues in time to conduct an effective, complete deposition of Stranger at 9:00 a.m. on Monday, January 16, 2006, see Letter from Trent A. Howell to Dennis Montoya (dated January 10, 2006); Letter from Trent Howell to Dennis Montoya (dated January  12, 2006); Letter from Trent Howell to Dennis Montoya (dated January 13, 2006), and Mr. Montoya's promises to address the outstanding discovery issues by December 26, 2005, Stranger did not fax any response at all to CSK's First Set of Interrogatories and Requests for Production until 5:14 p.m. on Friday, January 13, 2006, see Transmittal Memorandum at 1.  If Stranger's responses were adequate, perhaps CSK should have not filed its motion so quickly; given the inadequacy of those responses, however, the Court believes that CSK's efforts to resolve this dispute were adequate.

The authorities that Stranger cites on good faith efforts to resolve discovery disputes are not helpful.  This case does not present a situation where CSK sent only one letter and, having no response, immediately filed a motion to compel.  CSK communicated with Stranger via Mr. Howell's three letters from January 10-13, 2006, and had already agreed to an extension for the discovery deadlines.

CSK's actions satisfy reasonable standards of good faith efforts to resolve discovery disputes. This conclusion is supported by the fact that: (i) Mr. Montoya received such communications on those dates, made repeated assurances that responses would be provided at certain points in time, and repeatedly failed to deliver as agreed; (ii) Mr. Montoya was aware that the need for the responses was to facilitate a productive deposition of Stranger at 9:00 a.m. on January 16, 2006; (iii) CSK began preparing its motion because, less than one business day before that deposition, Stranger, again, had

-22-

not met a deadline to produce discovery responses or Initial Disclosures; and (iv) even if Mr. Montoya's late faxing of the responses at 5:14 p.m. on Friday, January 13, 2006, were excused, the responses themselves remained inadequate and could not have been reasonably viewed by Stranger or her counsel as resolving the numerous deficiencies on which CSK's counsel had been making specific requests.

CSK's efforts to obtain, by cooperation, Initial Disclosures and discovery responses involved more. From January 10, 2006 to January 13, 2006, Mr. Howell also exchanged a number of telephone calls with Mr. Montoya's office and one with Mr. Montoya himself, at 3:30 p.m. on January 13, 2006. Further, counsel's telephone conversation on December 5, 2005 involved efforts and agreements to obtain the executed Releases, and the written discovery responses in a time frame adequate to permit CSK to conduct Stranger's deposition on January 10, 2006.

It is true that Stranger responded quickly -- January 13, 2006 -- to some of CSK's concerns once they were brought to her attention on January 10th. But Stranger's delay is not excusable, especially in light of the fact that her responses were inadequate. Looking at the totality of CSK's efforts, the Court believes that CSK has satisfied the requirement that it try to resolve this motion in good faith before it comes to the Court.

> **2.    Mootness.**

Stranger contends that CSK's motion to compel is moot because Stranger has already submitted her responses. Indeed, Stranger contends that she provided her responses to Mr. Howell before the filing of his motion. Mr. Howell filed his Motion to Compel at 9:30 p.m. on January 13, 2006, and Stranger provided her responses at 5:14 p.m. earlier on January 13, 2006. See Motion to Compel, Document Verification. The issue, however, remains whether those responses are adequate.

That issue is not moot.

### 3.  Relevance.

The allegations against CSK are serious.  Stranger's scope of damages sought is broad.  At issue in the requests are such fundamental matters as Stranger identifying her medical providers and past and present employers.

Stranger does not dispute the propriety of CSK's requests.  Stranger has not asserted any objections.  Under rule 26, the discovery requests are pertinent to Stranger's Title VII claims and to CSK's defenses.  The information sought bears upon, or is reasonably calculated to lead to, evidence on whether Stranger was harassed; whether she provided complete, accurate facts on her employment application; whether there were alternative grounds upon which CSK, assuming it then knew of such grounds, may have terminated her employment; the nature and extent of Stranger's actual injuries and distress, if any; and the actual or alternative causes for any such injury or distress.  Thus, CSK seeks discovery concerning relevant topics.  The issue is whether Stranger has responded to the discovery or has responded in an adequate manner.

### 4.  Alleged False Representations Regarding Damages and Other Lawsuits.

CSK contends that Stranger has not been honest in her responses to written discovery or to questions at her depositions.  CSK offers two major illustrations of Stranger's refusal to provide complete and honest written discovery responses and her refusal to testify honestly under oath.  Specifically, CSK argues that the records demonstrate that Stranger has knowingly made false representations regarding her damages, particularly, but not limited to: (i) her claim of having incurred "medical" expense, while in fact she has not shown any postdating her separation; and (ii) her self-contradicting statements regarding involvement in other lawsuits.  Motion to Compel at 11.

a.    **Lawsuits.**

In response to written discovery served November 7, 2005, Stranger did not detail past involvement with courts, agencies, or law enforcement in answering Interrogatories No. 5 and 9, and Requests for Production No. 14 and 15.  Stranger's response to Request for Production No. 14 could be construed to represent that she is not aware of any lawsuits and not just any documents relating to any lawsuits; in other responses she specifically stated that she was not aware of any relevant documents, but in her answer to No. 14 she states that she is not aware of any lawsuits, and does not mention documents.  See Plaintiff's Discovery Responses at 8-9.

Stranger's answers to Interrogatory No. 5 and Request for Production No. 14 are also contrary to her later deposition testimony.  See Vol. II Stranger Depo. Written Transcript at 67:12-67:20 (acknowledging a post-1998 bankruptcy filing); id. at 68:23-69:1 (acknowledging domestic violence petition against her ex-husband); id. at 73:15-76:15 (acknowledging court appearance between 1998 and 2000 for a "reckless driving" citation to which she pled guilty).  The same testimony also appears to conflict with her responses to Interrogatory No. 9 -- "I have never been charged with a felony or a misdemeanor" -- and to Request for Production No. 15 -- "I have never been convicted of a felony or misdemeanor."  Plaintiff's Discovery Responses at 7, 9.

The discovery responses that Stranger served on January 16, 2006, are internally inconsistent -- e.g., in interrogatory answers, referring to past lawsuits, but in request for production responses, denying existence of any lawsuits. The inconsistencies -- initial denials progressing into limited admissions under impeachment examination -- do not instill confidence that the latest of Stranger's answers are complete or accurate.  Regardless, Stranger's statements do not warrant imposition of sanctions.  Even when combined, it is not clear that her unqualified responses demonstrate Stranger's

bad faith.  While Stranger appears to have misrepresented her involvement in other lawsuits, the inaccuracies appear to the Court to be more the result of confusion and imprecision than intentional lies.

       **b.**        **Other areas.**

Stranger has not made sufficient disclosures to permit CSK to gather information.  Stranger's January 16, 2006 deposition responses are materially deficient in a number of respects -- e.g., offering no contact information for the alleged medical care providers and subsequent employers.  See id. And her responses and testimony concerning past court proceedings, and the subject of medical care illustrates her inconsistency.

CSK contends that Stranger has selectively asserted and disclaimed medical damages and past treatments.  While now faced with a demand to disclose details of her past medical treatment, Stranger states, for the first time in this lawsuit, that she has not incurred costs for medical and psychological treatment for CSK's acts at this point.  Stranger states that this admission does not mean that she will not have to incur those costs at a later date.  Stranger represents that her failure to obtain medical and psychological treatment is the result of her inability to pay for such treatment. See Response at 5.  In all other materials offered for CSK to examine her claim, evaluate its exposure, and consider the need for settlement, she has alleged that she has received treatment.

CSK is not criticizing Stranger for her failure to obtain medical and psychological treatment. CSK's criticism, rather, centers around Stranger's changing representations regarding such treatment, as well as her failure to disclose any detailed, verifiable information.  At no point has Stranger provided CSK complete contact information and specified dates and details of treatment for each individual who purportedly provided her care in the past five years.  Whether Stranger intended to

allege that medical treatments occurred or that such treatments were necessary, CSK is entitled to learn her history of actual treatment to investigate whether her separation and/or past conditions rendered such later treatments necessary.

**5.      Adequacy of Responses.**

Stranger offers no comment on CSK's list of the specific inadequacies in her response.  Thus, Stranger does not defend her responses as complete, adequate, or, with any substance, accurate. Stranger has not provided an adequate reason why the Court should not at least enter an order compelling complete and accurate responses.

Stranger had partially and inconsistently responded before CSK had prepared and filed its motion to compel.  As far as the Court can determine, however, both the Answers and Disclosures remain incomplete, evasive, and inconsistent.  Stranger's deposition, which might have substituted for clear disclosures and answers, instead deepened the confusion and undermined confidence in prior statements, written and otherwise.

CSK asks the Court to enter an order compelling Stranger to provide complete and accurate answers to each of CSK's First Interrogatories and Requests for Production.  While the Court understands CSK's concern about all the responses, the Court will order supplemental responses only to those that CSK specifically put in issue with its motion.  The Court cautions Stranger that it is necessary for her to participate, in good faith, in the discovery process from this point forward.  If other responses need to be amended or supplemented, she has an obligation to do so.

The federal rules required her responses to written discovery by, originally, December 12, 2005.  In light of the history of delays, unfulfilled commitments to provide complete responses, and continued failure to provide complete or verified responses to CSK's interrogatories, the Court

concludes that Stranger's participation in the discovery process has not been sufficient.  Stranger, even after extended cooperation by CSK in an effort to resolve the problem, still fails to provide complete and sufficient answers, responses, and disclosures.  A Court order compelling such responses and production of documents is now necessary.

> **6.     Prejudice.**

By December 12, 2005, Stranger was obligated to respond -- but did not -- to CSK's First Set of Interrogatories and Requests for Production regarding such basic matters as damage claims; past and present employment; past involvement with lawsuits; witnesses' general areas of testimony; medical history and treatment; criminal history; and releases of medical, employment, and tax records.

While Stranger contends that CSK has not been able to establish prejudice, the record shows that there has been prejudice to CSK's ability to complete discovery, dispositive motions, and trial preparations.  CSK has been, and continues to be, prejudiced by Stranger's failure to comply with the litigant's duties to disclose, engage in discovery, and testify accurately under oath.  Stranger's discovery deficiencies have forced CSK to bear the expense of filing this motion.  Stranger and Mr. Montoya have required CSK to incur expense by not addressing CSK's efforts to resolve matters without involving the Court.  They have created obstacles to discovery.  The end result is that CSK is being prejudiced in its discovery, dispositive motions preparation, and trial preparation.

The discovery deadline is fast approaching.  The Court has ordered discovery to close on April 7, 2006 -- less than a month away.  CSK served the discovery requests at issue four months ago on November 7, 2005.  See Certificate of Service of First Set of Interrogatories, and Request for Production.  Even after Stranger complies with an order compelling discovery, CSK will then only begin the process of collecting records from those individuals and entities, if any, that provided her

medical care through the use of records releases.

Stranger's discovery deficiencies continue to deprive CSK of the opportunity for thorough, deliberate, and well-informed preparation of its case within the Court's deadlines for discovery (April 7, 2006), motions (May 7, 2006), and trial (July 10, 2006). And she offers no explanation why CSK, rather than she, should bear the detriment of such expenses and delays.

Further, a deposition that should have been completed in a single day was forced to extend into two. Before providing accurate answers, Stranger required CSK's counsel, in person, to probe repeatedly into areas which she and her counsel should have spent -- and were required by the rules to spend -- substantial time on their own, reflecting, gathering information, and providing complete information for Initial Disclosures and Answers to past written discovery. Stranger's noncompliance prejudiced CSK's ability to conduct her deposition.

### 7.   **Sanctions**.

While attempting to place a favorable gloss on certain matters, Stranger overlooks the adverse facts. It is true that Stranger responded to CSK's first letter within three days of Mr. Howell's receipt of that letter. But CSK had to put a lot of effort into the case before it got any response. And on the record before the Court, those responses remain inadequate.

CSK contends that Stranger has apparently calculated to deprive CSK of the opportunity to conduct her deposition with any meaningful opportunity to prepare. CSK argues that Stranger continues to delay on discovery matters in a manner apparently calculated to prejudice CSK's ability to prepare for trial within the Court's schedule. CSK contends that Stranger and Mr. Montoya hope that uncertainty will prompt CSK to pay liberally to avoid further nuisance and thus allow Stranger to reap a windfall without proving her claims.

The Court is not convinced, however, that Stranger's conduct was the product of intent as much as the result of neglect and fault. While neglect and carelessness can become bad faith, the Court does not, on the record before it, believe that Stranger's participation in the discovery process has been in bad faith.

The Court does not, however, have to find bad faith before it sanctions a party for discovery violations. See Coletti v. Cudd Pressure Control, 165 F.3d at 777. While the Court is reluctant to make a finding of bad faith, nevertheless, because of Stranger's unremitting posture on her evasive and incomplete answers, the Court deems Stranger as having no "substantial justification" for failing to make Initial Disclosures, see Fed. R. Civ. P. 37(c)(1), and for having failed to answer CSK's written discovery requests, see Fed. R. Civ. P. 37(a)(3). Despite ample time to investigate and produce the facts supporting her case, Stranger has not provided such answers. Stranger has been negligent at best and is at fault.

An order to compel and an award of some costs and fees are necessary and just. Stranger should bear a substantial portion of CSK's costs of preparing this motion. The motion was necessary as a result of Stranger's negligence and fault. The Court will enter an order requiring Stranger to reimburse CSK for 80 percent of its attorney's fees in preparing this motion. Although the Court is granting the motion in part and denying the motion in part, the Court is granting a large portion of CSK's requests and is denying only a small portion and believes that 80 percent is a just and reasonable apportionment. The remaining question is whether further sanctions are appropriate.

The Court will enter an order awarding CSK 80 percent of its costs and attorney's fees in bringing this motion. That award is sufficient to address the motion to compel. Other sanctions -- such as exclusion of evidence -- are unwarranted at this stage. CSK has not established prejudice so

-30-

great that the Court should start excluding evidence. The Court can, if necessary, alleviate some prejudice with extensions of the existing deadlines.

### 8. <u>Initial Disclosures.</u>

By November 8, 2005, Stranger was obligated to produce -- but did not -- Initial Disclosures. Stranger has not complied with her obligations to provide Initial Disclosures under rule 26(a)(1). The rules required Stranger to make Initial Disclosures by November 8, 2005. Stranger produced Initial Disclosures on January 26, 2006. Stranger's Initial Disclosures remain deficient.

Stranger has not provided complete contact information on each past and present healthcare provider. <u>See</u> Initial Disclosures at 4-5. And if Stranger is now alleging that no medical treatments occurred, she has not detailed any facts, evidence, or witnesses to support any of her damage categories. <u>See id.</u> at 4-5. Stranger should amend her Initial Disclosures.

### 9. <u>Deposition.</u>

CSK contends that, because Stranger, by withholding evidence, caused her deposition to be prolonged unnecessarily, the Court should order that she bear CSK's costs -- including court reporter and videographer appearance and transcription fees -- for the second and any subsequent day of that deposition. While the dispute about the conduct of the first day of deposition is generally irrelevant to this motion, it is relevant to this request for costs.

CSK started Stranger's deposition with limited information. She is responsible for at least some of the delay. On the other hand, a deponent always thinks the other side is wasting time, while the examiner thinks its questions are essential. It is difficult for the Court to determine accurately and with precision what occurred during the deposition and decide, at this stage, whether effort was wasted. It does appear, however that more accurate and complete answers would have facilitated

-31-

CSK's deposition.

If CSK believes that a further deposition of Stranger is necessary, the Court will require Stranger to pay for the appearance fee of the court reporter, but not the videographer. Stranger will also bear one-half of CSK's transcription fees if a future deposition is necessary.

**IT IS ORDERED** that the Defendant's Motion to Compel Plaintiff's Response to Discovery and for Rule 37(c) Sanctions is granted in part and denied in part. The Plaintiff is compelled to provide complete answers and produce all documents responsive to Interrogatories 3, 4, 5, 6, 7, and 8, and Requests for Production 2, 6, 7, 8, 10, 13, and 14. The Plaintiff shall provide amended, verified answers to the interrogatories and amended responses to these requests for production, along with relevant documents, within ten business days of March 8, 2006. The Plaintiff shall provide amended and complete Initial Disclosures within 10 business days of March 8, 2006. The Court will not strike any pleadings or prohibit evidence regarding any claim for medical bills, physical injury, mental anguish, emotional distress, pain and suffering, humiliation or reputation impairment. The Court will not assess the prior costs of deposition against Stranger. The Court will require her to reimburse CSK 80 percent of its costs and attorney's fees incurred in briefing and arguing this motion. If a future deposition of Stranger is necessary, Stranger will pay the appearance fee of the court reporter and one-half of CSK's transcription costs, but not the videographer's fee.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Dennis W. Montoya
Montoya Law, Inc.
Rio Rancho and Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Trent A. Howell
Holland & Hart, LLP
Santa Fe, New Mexico

-- and --

Kimberly Dempster Neilio
Holland & Hart, LLP
Denver, Colorado

    *Attorneys for the Defendant*